## PRIORITY OF A SUBSEQUENT EXECUTION OVER AN ATTACHMENT.

Common Pleas Court of Hamilton County.

AUGUST H. BODE, JR., TRUSTEE, v. CHARLES L. RUEHRWEIN ET AL.

Decided, February, 1916.

*Judgment in an Attachment—Not Prior to a Subsequent Judgment Upon Which Execution Was Levied—Attachment in Another Suit Does Not Prevent Acquiring of a Lien by Execution—Dormancy of Attachment—Subsequent Bankruptcy.*

1. The provisions of General Code, Section 11708, that no judgment on which execution has not been issued and levied before the expiration of one year next after its rendition shall operate as a lien on the estate of the debtor to the prejudice of any other *bona fide* judgment creditor, apply to a judgment rendered in a suit in which an attachment was issued and levied.

2. Under General Code, Section 11663, a judgment rendered in a suit becomes dormant within five years unless an execution on it is sued out, notwithstanding the fact that an attachment was issued and levied on the judgment debtor's property. *Shue v. Ferguson*, 3 Ohio, 136.

3. If the judgment debtor is adjudicated a bankrupt, the lien of a judgment on which an execution has been sued out and levied within a year of its rendition is not lost if no further execution is sued out within five years after the first execution. *Pence, Assignee, v. Cochran*, 6 Fed., 276; *Scott v. Dunn*, 26 Ohio St., 63; *Ambrose, Admr., v. Byrne, Exr.*, 61 Ohio St., 147.

4. A judgment rendered in 1896 in a suit in which an attachment was levied on all the judgment debtor's property, but upon which no execution was sued out until February, 1902, becomes dormant and is subordinate to a junior judgment rendered in October, 1900, upon which execution was sued out and levied on November 7, 1900, although bankruptcy proceedings intervened on September 27, 1905, and no further execution was sued out by the junior judgment creditor. 3 Ohio, 136; 9 Ohio, 142; 2 Ohio St., 36; 12 C.C.(N. S.), 286.

*Aaron A. Ferris*, for Mersman judgment.
*Stephens & Stephens*, for German National Bank.
*Mitchell Wilby*, for trustee in bankruptcy.
*Orville K. Jones*, for widow.

MAY, J.

This cause came on for hearing on a motion to distribute proceeds of property sold by the trustee in bankruptcy under the direction of the referee in bankruptcy, and involves the fixing of priorities between certain judgment creditors. The important facts are as follows:

Charles L. Ruehrwein was the owner of several parcels of real estate; on some of these there were mortgages. Before any foreclosure proceedings were brought, the defendant, the German National Bank, recovered a judgment in case No. 108614, Common Pleas Court, on December 5, 1896, having on October 29th previous caused an attachment to be issued and levied by the sheriff on all the property of Ruehrwein in Hamilton county, Ohio. The bank was made a party in 1898 in a proceeding against Ruehrwein to reform a mortgage, and in that cause, 113758, it set up its judgment and attachment, and during its pendency, more than five years having elapsed after the rendition of the judgment, it was revived December 31, 1901, and on February 10, 1902, execution was issued thereon and a levy made; and on October 8, 1906, another execution was issued but no levy made.

The defendant, Fredericka Mersman, at the October, 1900, term of the Superior Court, recovered a judgment against Ruehrwein, in case No. 50775, and on November 7, 1900, she issued an execution and caused a levy to be made on the property in question in this case. Charles L. Ruehrwein having been declared a bankrupt by the United States District Court, in case 3733, on the 27th day of September, 1905, while this judgment was in force and within five years from the levying of the execution, Fredericka Mersman, on the 17th day of October, 1905, filed her claim based on the judgment with C. T. Greve, referee in bankruptcy.

The bank contends that although it did not issue and levy an execution on its judgment obtained on December 5, 1896, that its judgment still remains in full force because an attachment had been issued and levied on October 29, 1896.

This is not the law in Ohio. There is no doubt whatsoever that there was no intention on the part of the bank to abandon

its attachment; in fact, the priority of the judgment was asserted and upheld in two cases. Nevertheless, in this state it is necessary, even where there is an attachment, in order to give a judgment priority over other *bona fide* judgment creditors, not only to issue, but also to levy, an execution on the property within one year from the rendition of the judgment.

This was expressly held in the leading case in this state, *Shue* v. *Ferguson,* 3 Ohio, 136, at 138:

"If there are several judgments and the property in question has not been levied on within the year under either of them, they stand on an equal footing, and the judgment creditor who first takes out an execution and causes a levy to be made will have the preference."

In this case the Bank of the United States obtained a judgment on January 6, 1822, and made a levy on August 20, 1823. Hamberger and Sellers, in May, 1823, obtained a judgment by attachment against Ferguson, a debtor of the Lebanon bank, and on December 23, 1826, caused an execution to be levied on the land in question. Shue and Emlin obtained judgment against Ferguson December 24, 1825, and caused executions to be issued and levied December 23, 1826. In determining priorities, the court held that the judgment of the Bank of the United States was first because execution, though not levied within a year of its rendition, was still levied before December 23, 1826, the levy of Shue and Emlin; "that next in order of preference are the judgments of Shue and Emlin. Their levies were made within one year and before the levies of Hamberger and Sellers, which were not made until three years after the date of the judgment."

It follows from the reasoning and actual decision in this case that no priority is obtained merely by attachment; there must be a levy within one year of the rendition of the judgment. See also *Humphreys* v. *Schlenk,* 12 C.C.(N.S.), 286; *Corwin* v. *Benham,* 2 Ohio St., 36; *Bank* v. *Coal Company,* 11 C. C., 412, affirmed 55 Ohio St., 233.

But it is claimed by the German National Bank that because it was made a party in case 113758, it was unnecessary to levy execution.

In this state, under *Dempsey* v. *Bush,* 18 Ohio, St., 376, if a judgment creditor is a party in a foreclosure suit or a suit to marshall liens, it is unnecessary to issue execution to preserve the lien. But it is also the law that the judgment is a lien only on the property involved in that suit. 3 Ohio, 136, at 138; *Walpole* v. *Ink,* 9 Ohio, 142.

Conceding, for the sake of argument, the bank's contention that its lien is prior to that of the Mersman judgment, it can only be on the specific property involved in the case, and the property of the proceeds of which are sought to be distributed in the case at bar was not involved in that case.

Inasmuch as there is not sufficient money to pay both the bank and the Mersman judgment, the question is, which judgment has priority?

This question must be decided by reference to the statutory provisions.

Section 11663 provides that if execution on a judgment be not sued on within five years from the date of the judgment, or if five years intervene between the date of the last execution issued thereon and the time of suing out another execution, such judgment shall be dormant and cease to operate as a prior lien on the estate of the judgment debtor.

Section 11708 provides that no judgment on which execution is not issued and levied before the expiration of one year next after its rendition shall operate as a lien on the estate of a debtor to the prejudice of any other *bona fide* judgment creditor.

The bank's judgment of December 5, 1896, on which no levy was made on the property in this suit within either one year or five years, became dormant and was a dormant judgment on November 7, 1900, when a levy was made under the Mersman judgment on the property involved in this case. Therefore, that judgment is prior to the bank's judgment. 3 Ohio, 136; 2 Ohio St., 36; 12 C.C.(N.S.), 286; 11 C. C., 412, affirmed 55 Ohio St., 233.

The bank further contends that even if it lost its priority in 1900, that because it levied an execution in 1902 on its revived judgment and issued another execution in 1906, it is at least equal in right with the Mersman judgment, if not superior, be-

cause no execution was levied under the Mersman judgment after November 7, 1900.

Mersman contends, and properly so, that because the judgment debtor, Ruehrwein, was declared a bankrupt on September 27, 1905, within five years of the levy, it is unnecessary to issue and levy an execution thereafter.

Such is the law of Ohio. Under the bankruptcy law, Section 64*b*, subdivision 5, priority is given to ''debts owing to any person who by laws of the state or United States is entitled to priority.''

In *Pence, Assignee,* v. *Cochran et al,* 6 Fed., 276, the District Court of the United States sitting in this district held that the priority of liens of judgments is to be determined as they existed at the date of the adjudication in bankruptcy. The court then cites with approval the decision of the Ohio Supreme Court, in *Scott* v. *Dunn,* 26 Ohio St., 63, wherein it was held that under the assignment law regulating the administration of assignments (now General Code, Section 10809) the priority of judgment liens is to be determined as the liens existed at the time the assignment took effect.

In *Ambrose, Admr.,* v. *Bryne,* 61 Ohio St., 146, the court approved the principle laid down in *Scott* v. *Dunn, ubi supra,* holding:

''Where a judgment is a subsisting lien on the lands of the debtor at the time of his death, it is not necessary thereafter to issue execution upon it in order to preserve the lien. It is entitled to share in the proceeds of the land, when sold by the personal representative, according to its priority at the time of the debtor's death, although execution be not issued within five years from its rendition or the date of the last execution.''

For these reasons it is ordered that after the payment of the costs, including compensation to the trustee in bankruptcy and the widow's dower, the Mersman judgment be paid first, and if there is any balance it be applied to the payment of the judgment of the German National Bank.